UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

WV UNIVERSAL MANAGEMENT, LLC,
    a Florida limited liability company,
    also dba Treasure Your Success,

GLOBAL FINANCIAL ASSIST, LLC,
    a Florida limited liability company,

LEADING PRODUCTION, LLC,
    a Florida limited liability company,

WILLY PLANCHER,
    individually and as a member of
    WV Universal Management, LLC,
    Global Financial Assist, LLC, and
    Leading Production, LLC,

VALBONA TOSKA, aka Val Jones,
    individually and as a member of
    WV Universal Management, LLC,
    Global Financial Assist, LLC, and
    Leading Production, LLC,

    Defendants.

Civ No. 6:12cv1618-Orl-22KRS

PLAINTIFF FEDERAL TRADE
COMMISSION'S
COMPLAINT FOR PERMANENT
INJUNCTION AND OTHER
EQUITABLE RELIEF



Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and



Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

3. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFF

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, 6102(c) and 6105(b).

**DEFENDANTS**

6. WV Universal Management, LLC ("WVUM") is a Florida limited liability company with its principal place of business at 1265 S. Semoran Blvd., Suite 1250, Winter Park, Florida 32792. Doing business as Treasure Your Success ("TYS"), WVUM transacts or has transacted business in this district and throughout the United States.

7. Global Financial Assist, LLC ("GFA") is a Florida limited liability company with its principal place of business at 1265 S. Semoran Blvd., Suite 1250, Winter Park, Florida 32792. GFA transacts or has transacted business in this district and throughout the United States.

8. Leading Production, LLC ("LP") is a Florida limited liability company with its principal place of business at 931 S. Semoran Blvd., Suite 206, Winter Park, Florida, 32792. LP transacts or has transacted business in this district and throughout the United States.

9. Willy Plancher ("Plancher") is a member, partner, and/or manager of WVUM, GFA and LP. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Plancher resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

10. Valbona Toska ("Toska") is a member, partner, and/or manager of WVUM, GFA and LP. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Toska resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States. In connection with the matters alleged herein, Toska has also used the name "Val Jones."

## COMMERCE

11. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

12. Since at least December 2011, Defendants have telemarketed credit card interest rate reduction services to consumers nationwide in the United States. In many instances, Defendants' telemarketing calls are initiated using a telemarketing service that delivers prerecorded voice messages, known as "voice broadcasting" or "robocalling." The prerecorded messages often offer consumers the purported opportunity to secure substantially lower credit card interest rates and instruct consumers to press a number on their phone to be connected to a live representative. When consumers press the number, they are connected to a live representative who works for Defendants. Defendants also market their program via the Internet on a website, *www.treasureyoursuccess.com*.

13. During telemarketing calls, Defendants claim to have the ability to reduce substantially consumers' credit card interest rates. In many instances, Defendants claim that they can obtain very low interest rates, such as 3.0 percent, for consumers. Defendants also often claim that their interest rate reduction services will provide substantial savings to consumers, typically at least $2500, in a short period of time, and will enable consumers to pay off their debt much faster, typically three to five times faster.

14. Defendants typically take information from consumers regarding their credit card accounts along with other personal information such as Social Security numbers.

15. Defendants charge consumers a fee ranging from $593.93 to $1593.93 for their services. Defendants typically place this charge on consumers' credit cards during or immediately following the telemarketing calls. During the call, however, Defendants represent that the fee will not be charged until the consumer has achieved the promised savings or, on other occasions, until the consumer has signed a written contract. In fact, in numerous instances, Defendants have charged their fee to the consumer's credit card even though the consumer has not signed, or even received, the written contract. Some consumers who were charged had not even orally agreed to the transaction.

16. After the call and after they have charged their fee to the consumer's account, Defendants sometimes send consumers a written contract and forms to complete and return listing, again, all of the consumer's credit card account information and other sensitive personal information such, as date of birth and Social Security number. They may also, or instead, send consumers a tablet computer purportedly to record and keep track of their

financial situation as Defendants improve it. In fact, if the consumer receives a tablet computer, it is of very low quality and frequently doesn't work.

17. In numerous instances, Defendants fail to provide consumers with the significant reductions in credit card interest rates and minimum savings that were promised during the initial telephone calls, and they typically fail to provide any reduction in consumers' credit card interest rates, or any savings, at all. Consequently, consumers are not able to pay their credit card debts faster than they could have without Defendants' service.

18. Despite Defendants' failure to deliver on the promises made to consumers, Defendants rarely refund the fee charged to consumers for purchasing Defendants' credit card interest rate reduction services. Consumers who discover that Defendants have placed a charge on their credit card accounts before providing any service and who call to cancel are often promised a refund but do not receive one.

19. While telemarketing their program, Defendants, acting directly or through one or more intermediaries, have made numerous calls to telephone numbers on the National Do Not Call Registry ("Registry"), as well as to consumers who have previously asked Defendants not to call them again.

20. In numerous instances, Defendants, acting directly or through one or more intermediaries, have initiated telemarketing calls that failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call: the identity of the seller; that the purpose of the call is to sell goods or services; or the nature of the goods or services.

21. In numerous instances, Defendants, acting directly or through one or more intermediaries, have initiated prerecorded telemarketing calls to consumers that failed to promptly make such disclosures, or to immediately thereafter disclose the mechanism for asserting a Do Not Call request.

22. In numerous instances, Defendants, acting directly or through one or more intermediaries, made outbound prerecorded calls that delivered messages to induce the sale of goods or services when the persons to whom these telephone calls were made had not expressly agreed, in writing, to authorize the seller to place prerecorded calls to such persons.

23. Defendants have called telephone numbers in various area codes without first paying the annual fee for access to the telephone numbers within such area codes that are included in the National Do Not Call Registry.

## VIOLATIONS OF THE FTC ACT

24. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

25. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. 15 U.S.C. § 45(a). Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT ONE

### Misrepresentations in Violation of Section 5

26. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of credit card interest rate reduction services, Defendants have represented, directly or indirectly, expressly or by implication, that:

   A. Consumers who purchase Defendants' credit card interest rate reduction services will have their credit card interest rates reduced substantially, including to as low as 3%;

   B. Consumers who purchase Defendants' credit card interest rate reduction services will save thousands of dollars in a short time as a result of lowered credit card interest rates; and

   C. Consumers who purchase Defendants' credit card interest rate reduction services will be able to pay off their debts much faster as a result of lowered credit card interest rates.

27. In truth and in fact, the representations set forth in Paragraph 26 above were false or not substantiated at the time the representations were made.

28. Therefore, Defendants' representations as set forth in Paragraph 26 above are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT TWO

29. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of credit card interest rate reduction services, Defendants

have represented, directly or indirectly, expressly or by implication, that Defendants will not charge consumers for their services until:

  A. After consumers have realized the promised savings; or

  B. After consumers have had time to review, sign and return a written contract which Defendants say will be mailed to them.

30. In truth and in fact, Defendants' practice is to charge their fee to the consumer's account immediately or within one day after the consumer orally agrees to accept Defendants' services.

31. Therefore, Defendants' representations as set forth in Paragraph 29 above are false and misleading and constitute deceptive acts or practices in violation of Section (a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT THREE

### Unauthorized Billing

32. In numerous instances, Defendants have caused billing information to be submitted for payment without having obtained previously consumers' express informed consent.

33. Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

34. Therefore, Defendants' practice as described in Paragraph 32 above constitutes an unfair act or practice in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## THE TELEMARKETING SALES RULE

35.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

36.     As amended, effective September 27, 2010, and October 27, 2010, the TSR addresses the telemarketing of debt relief services. The amendments effective September 27, 2010, among other things, prohibit misrepresentations about material aspects of debt relief services. The amendments effective October 27, 2010, prohibit sellers and telemarketers from charging or collecting an advance fee before renegotiating, settling, reducing, or otherwise altering consumers' debts.

37.     Defendants are "seller[s]" and/or "telemarketer[s]" engaged in "telemarketing," and Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone call[s]" to consumers to induce the purchase of goods or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2(v), (aa), (cc), and (dd). Defendants also are sellers or telemarketers of "debt relief service[s]," as defined by the TSR, 16 C.F.R. § 310.2(m).

38.     Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(v).

39.     As amended, effective September 27, 2010, the TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or

services, any material aspect of any debt relief service. 16 C.F.R. § 310.3(a)(2)(x).

40. The TSR prohibits sellers and telemarketers from causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the consumer. 16 C.F.R. § 310.4(a)(7).

41. As amended, effective October 27, 2010, the TSR prohibits sellers and telemarketers from requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

A. The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

B. The consumer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

C. To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either (1) bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount; or (2) is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration.

16 C.F.R. § 310.4(a)(5)(i).

42. The TSR, as amended in 2003, established a "do-not-call" registry (the

"National Do Not Call Registry" or "Registry"), maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

43. Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at www.donotcall.gov, or by otherwise contacting law enforcement authorities.

44. The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry over the Internet at www.telemarketing.donotcall.gov to pay any required fee(s) and to download the numbers not to call.

45. The TSR prohibits sellers and telemarketers from calling any telephone number within a given area code unless the seller on whose behalf the call is made has paid the annual fee for access to the telephone numbers within that area code that are included in the Registry. 16 C.F.R. § 310.8.

46. The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to telephone numbers on the Registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

47. The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to any person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered. 16 C.F.R. § 310.4(b)(1)(iii)(A).

48. The TSR requires telemarketers in an outbound telephone call to disclose

truthfully, promptly, and in a clear and conspicuous manner, the following information:

    A.    The identity of the seller;

    B.    That the purpose of the call is to sell goods or services; and

    C.    The nature of the goods or services.

16 C.F.R. § 310.4(d).

49.    As amended, effective December 1, 2008, the TSR prohibits a telemarketer from engaging, and a seller from causing a telemarketer to engage, in initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the message promptly discloses:

    A.    The identity of the seller;

    B.    That the purpose of the call is to sell goods or services; and

    C.    The nature of the goods or services.

16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

50.    As amended, effective September 1, 2009, the TSR prohibits initiating a telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, that evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller. The express agreement must include the recipient's telephone number and signature, must be obtained after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person, must be obtained after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such

person, and must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. 16 C.F.R. § 310.4(b)(1)(v)(A).

51. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

### COUNT FOUR

### Misrepresentation of Debt Relief Service in Violation of the TSR

52. In numerous instances on or after September 27, 2010 in connection with the telemarketing of debt relief services, Defendants have misrepresented, directly or by implication, material aspects of the debt relief services, including, but not limited to, that:

    A. Consumers who purchase Defendants' credit card interest rate reduction services will have their credit card interest rates reduced substantially, including to as low as 3%;

    B. Consumers who purchase Defendants' credit card interest rate reduction services will save thousands of dollars in a short time as a result of lowered credit card interest rates;

    C. Consumers who purchase Defendants' credit card interest rate reduction services will be able to pay off their debts much faster as a result of lowered credit card interest rates;

    D. Defendants will not charge consumers a fee for Defendants' services

until consumers have achieved the promised savings; and

E. Defendants will not charge consumers a fee for Defendants' services until after consumers have had time to review, sign and return a written contract which Defendants say will be mailed to them.

53. Defendants' acts and practices, as described in Paragraph 52 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(2)(x).

## COUNT FIVE

### Charging or Receiving a Fee in Advance of Providing Debt Relief Services

54. In numerous instances on or after October 27, 2010, in the course of telemarketing debt relief services, Defendants have requested or received payment of a fee or consideration for a debt relief service before (a) they have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and (b) the customer has made at least one payment pursuant to that agreement.

55. Defendants' acts or practices, as described in Paragraph 54 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(a)(5)(i).

## COUNT SIX

### Violating the National Do Not Call Registry

56. In numerous instances, in connection with telemarketing, Defendants have engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

## COUNT SEVEN

### Failing to Honor Do Not Call Requests

57. In numerous instances, in connection with telemarketing, Defendants have engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a person who previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of Defendants, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

## COUNT EIGHT

### Initiating Unlawful Prerecorded Messages On or After September 1, 2009

58. In numerous instances on or after September 1, 2009, Defendants have made, or caused others to make, outbound telephone calls that delivered prerecorded messages to induce the purchase of goods or services in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(v).

## COUNT NINE

### Failing to Make Required Oral Disclosures

59. In numerous instances, including on or after December 1, 2008, in the course of telemarketing goods and services, Defendants have made, or caused others to make, outbound telephone calls that deliver a prerecorded message in which the telemarketer or message failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call:

    A. The identity of the seller;

    B. That the purpose of the call is to sell goods or services; and

    C. The nature of the goods or services.

60. Defendants' acts and practices, as described in Paragraph 59 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.4(b)(1)(v)(B)(ii) and (d).

## COUNT TEN

### Failing to Pay National Registry Fees

61. In numerous instances, in connection with telemarketing, Defendants have initiated, or caused others to initiate, an outbound telephone call to a telephone number within a given area code when Defendants had not, either directly or through another person, paid the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry, in violation of the TSR, 16 C.F.R. § 310.8.

## COUNT ELEVEN

### Unauthorized Billing

62. In numerous instances, in the course of telemarketing goods and services, Defendants have caused billing information to be submitted for payment without the express informed consent of the consumer.

63. Defendants' acts and practices, as described in Paragraph 62 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(a)(7).

## CONSUMER INJURY

64. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief

by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

### THIS COURT'S POWER TO GRANT RELIEF

65. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

66. Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. § 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

B.  Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendants;

C.  Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the TSR, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.  Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully Submitted,

WILLARD K. TOM
General Counsel

JON MILLER STEIGER
Regional Director
East Central Region

Dated: 10/29/2012

MICHAEL MILGROM, OH Bar # 0012959
Trial Counsel
JONATHAN L. KESSLER, CO Bar # 15094
FIL M. DE BANATE, OH Bar # 0086039
Federal Trade Commission
1111 E. Superior Ave., Suite 200
Cleveland, Ohio 44114
(216) 263-3419 (telephone) (Milgrom)
(216) 263-3436 (telephone) (Kessler)
(216) 263-3413 (telephone) (de Banate)
(216) 263-3426 (facsimile)
mmilgrom@ftc.gov
jkessler@ftc.gov
fdebanate@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION