UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FEDERAL TRADE COMMISSION,**

       **Plaintiff,**

v.                                           Case No: 6:12-cv-1618-Orl-22KRS

**HES MERCHANT SERVICES COMPANY, INC., BUSINESS FIRST SOLUTIONS, INC., VOICEONYX CORP., HAL E. SMITH, JONATHON E. WARREN, RAMON SANCHEZ-ORTEGA, UNIVERSAL PROCESSING SERVICES OF WISCONSIN, LLC and DEREK DEPUYDT,**

       **Defendants.**

## ORDER

This cause comes before the Court on Defendant Universal Processing Services of Wisconsin, LLC's ("UPS") Motion for Summary Judgment (Doc. No. 94), in response to which Plaintiff Federal Trade Commission (the "FTC") filed a Memorandum in Opposition (Doc. No. 110). UPS filed a Reply in support of its Motion (Doc. No. 114).

### I. BACKGROUND

The FTC alleges that the Defendants in this action worked together to perpetuate a telemarketing scheme to sell fraudulent credit card interest rate reduction services. The FTC initially sued WV Universal Management, LLC, Global Financial Assist, LLC, Leading Production, LLC, Willy Plancher, and Valbona Toska, (*see* Doc. No. 1); after commencing discovery against these Defendants, the FTC obtained leave to file an amended complaint that incorporated the remaining Defendants as well as more substantial factual allegations.

The FTC alleges just one count against UPS and its former President, Defendant Derek DePuydt ("DePuydt"), for assisting and facilitating deceptive and abusive telemarketing acts and practices in violation of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.3(b). UPS "is the interface between the processing banks and their merchant customers who process credit and debit card transactions in a wide variety of business segments." (Mot. Summ. J. (Doc. No. 94) p. 2.) DePuydt was the President of UPS from 2007 until January 25, 2013. (*Id.* at p. 3.) The FTC claims that from November 2011 until July 2012, UPS processed credit card charges stemming from the alleged scheme in an amount totaling approximately $2.8 million. (Am. Compl. ¶ 59.)

## II. LEGAL STANDARDS

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must satisfy this initial burden by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Norfolk S. Ry. Co. v. Groves*, 586 F.3d 1273, 1277 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). However, the movant is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. When it conflicts, the court presumes the nonmoving party's evidence to be true and will draw all reasonable inferences in its favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003) (citation omitted).

In *Anderson v. Liberty Lobby*, the Supreme Court explained that the standard for summary judgment is "whether reasonable jurors could find by a preponderance of the evidence that the

plaintiff is entitled to a verdict." 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255.

### III. ANALYSIS

It is a deceptive telemarketing act or practice and a violation of the TSR for anyone "to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates" other portions of the TSR. 16 C.F.R. § 310.3(b). UPS argues that it is not liable for supporting the other Defendants' deceptive practices because it did not know or consciously avoid knowing about their violations of the TSR. The FTC claims that such knowledge can be imputed to UPS based on the knowledge of its President, DePuydt. UPS's sole argument in the instant Motion is that the adverse agent exception to the general rule of imputed knowledge should apply to shield UPS from liability.

It is a general tenet of agency law that an agent's knowledge is imputed to his principal when acting within the scope of his authority; since corporations act through their employees, the same presumption applies with respect to the employer-employee relationship. *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1369 (Fed. Cir. 2013) (citing *Meyer v. Holley*, 537 U.S. 280, 285, 123 S. Ct. 824, 829 (2003)); *LanChile Airlines v. Conn. Gen. Life Ins. Co. of N. Am.*, 759 F. Supp. 811, 814 (S.D. Fla. 1991) (citation omitted). However, there is an exception to the general rule when an agent is "secretly . . . acting adversely to the principal and entirely for his own or another's purposes." *LanChile*, 759 F. Supp. at 814 (alteration in original) (quoting *Restatement (Second) of Agency*, § 282). Importantly, "the mere fact that the agent's primary interests are not coincident with those of the principal does not prevent the latter from being

affected by the knowledge of the agent if the agent is acting for the principal's interests." *Id.* (citing *Restatement* § 282, cmt. c). Thus, the adverse interest exception is a "narrow" one that only applies "when the agent's conduct is entirely in the agent's interest without even incidental benefit to the principal." *Kellogg*, 728 F.3d at 1369 (citation and quotation marks omitted).

Drawing all reasonable inferences in favor of the FTC's evidence, the Court cannot hold, as a matter of law, that the adverse agent exception applies to foreclose UPS's liability. UPS argues that DePuydt's violation of company policies and attempts to conceal his communications with the other Defendants are sufficient evidence that he was an adverse agent. However, UPS presents no evidence that DePuydt was acting solely in his own interest, without any benefit to the company. Hal Smith, DePuydt's contact within the alleged telemarketing scheme, maintained one of the "largest, highest risk, most profitable, and highest maintenance accounts" in UPS's portfolio. (UPS Draft Report of Internal Investigation (Doc. No. 110-1) pp. 1, 5.) According to DePuydt, UPS's relationship with Hal Smith produced a net profit of four to five million dollars over a ten-year period. (Doc. No. 110-1 at p. 8.) Even if, as UPS claims, the company eventually took a write down of $1.5 million and had to restate its financial statements in 2011 and 2012, there is clearly a disputed issue of material fact as to whether UPS benefitted from DePuydt's alleged support of Smith and the other Defendants in the deceptive telemarketing scheme. There is also no evidence that DePuydt misappropriated any of the income from the Smith accounts for his own personal use, which is a common reason for the adverse agent exception to apply. *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1338-39 (11th Cir. 1997) (applying adverse agent exception where corporate president "stole company property and subsequently filed a fraudulent [insurance] claim for the loss" in order to pay his gambling debts).

There is also evidence that DePuydt was not acting in secret. Kim Olszewski, the chief operating officer, knew about DePuydt's relationship with Smith and thought it posed a risk to the company, but took no action other than to express her concerns to DePuydt. (Olszewski Aff. (Doc. No. 94-2) ¶¶ 16-18.) Another employee, Marcus Schaefer, also expressed concerns about the Smith accounts to DePuydt, but took no further action. (Olszewski Aff. ¶ 19.) According to Olszewski, DePuydt assured her and Schaefer that "upper management knew" about the Smith accounts and that the revenue from them "was too important to the company." (*Id.*) This testimony is significant, and bolsters the Court's conclusion that there are disputed issues of fact pertaining to whether DePuydt was an adverse agent.

## IV. CONCLUSION

Based on the foregoing, it is ordered as follows:

1.      Defendant Universal Processing Services of Wisconsin, LLC's Motion for Summary Judgment (Doc. No. 94), filed August 16, 2013, is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on February 19, 2014.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties