**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | **Civ.No.6:12-cv-1618-Orl-22-KRS** |
| Plaintiff, | **JUDGE ANNE C. CONWAY** |
| v. | **MAGISTRATE JUDGE KARLA R. SPAULDING** |
| **WV UNIVERSAL MANAGEMENT, LLC,** *et al.*, | **MOTION FOR PERMANENT INJUCTIONAGAINST DEFENDANTS HAL E. SMITH AND HES MERCHANT SERVICES** |
| Defendants. | |

On November 18, 2014, the Court granted Plaintiff Federal Trade Commission's ("FTC") motion for summary judgment against Defendants Hal E. Smith, ("Smith"), HES Merchant Services Company, Inc., ("HES") and Universal Processing Services of Wisconsin, LLC ("UPS"). (Doc. No. 208.) Pursuant to that Order, Plaintiff FTC files this motion, setting forth the legal and factual bases for the attached proposed Permanent Injunction ("Proposed Order") against Defendants Smith and HES. The Proposed Order contains permanent injunctive relief, remedial relief, including an equitable monetary judgment of $1,734,972 for consumer redress, and monitoring provisions to facilitate order compliance. The Proposed Order is attached.

**MEMORANDUM OF LAW**

**I.    BACKGROUND AND SUMMARY**

On October 29, 2012, Plaintiff FTC filed its Complaint against original defendants Willy Plancher, Valbona Toska, WV Universal Management, LLC, Global Financial Assist, LLC, and Leading Production, LLC. (Doc. No. 1.) On June 17, 2013, the FTC filed a motion seeking

1

leave to amend its complaint. (Doc. No. 58.) On June 18, 2013, the Court granted the FTC's motion, and the FTC filed its Amended Complaint, adding defendants HES Merchant Services Company, Inc., Business First Solutions, Inc., VoiceOnyx Corp., Hal E. Smith, Jonathon E. Warren, Ramon Sanchez-Ortega, UPS, and Derek Depuydt. (Doc. Nos. 60 & 61.)

Later, the FTC negotiated stipulated permanent injunctions with all defendants in this case except for Defendant Smith (and his wholly-owned corporation HES Merchant Services Company, Inc.) and Defendant UPS. At the conclusion of discovery, the FTC filed its Motion for Summary Judgment, which the Court granted in full. (Doc. No. 208.)

Smith, individually and through HES, directed and controlled Treasure Your Success, an enterprise that placed illegal robo-calls to thousands of consumers in order to sell to a few of them an advance fee credit card interest rate reduction service ("CCIRRS"). The robo-calls, as well as the advance fee CCIRRS were prohibited by the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310. TYS also violated the TSR in several other ways as alleged in the Amended Complaint (Doc. 61). The representations made to sell the CCIRRS were deceptive, promising savings that could not be realized and, therefore, violated Section 5 of the FTC Act (15 U.S.C. § 45). The FTC now moves for a permanent injunction against Smith and HES that will prevent a recurrence of the violations and similar practices and will provide restitution to consumers who were victimized by this scheme.

## II. THE COURT'S AUTHORITY TO GRANT THE REQUESTED RELIEF

Section 13(b) of the FTC Act (15 U.S.C. § 53(b)) empowers the Court to grant permanent injunctive and other equitable relief to prevent and remedy violations of the laws enforced by the FTC. *FTC v. Washington Data Res., Inc.*, 704 F.3d 1323, 1326 (11th Cir. 2013), quoting *FTC v.*

*Gem Merch. Corp.*, 87 F.3d 466, 468 (11th Cir. 1996). Section 13(b)'s "unqualified grant of statutory authority . . . carries with it the full range of equitable remedies, including the power to grant consumer redress and compel disgorgement of profits." *Id.; see also FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433 (11th Cir. 1984) ("'[C]ongress, when it gave the district court authority to grant a permanent injunction against violations of any provisions of law enforced by the Commission, also gave the district court authority to grant any ancillary relief necessary to accomplish complete justice[.]'") (quoting *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982)). The violations of law committed by Smith and HES, and their pattern of engaging in practices that implicate Section 5 and the TSR, justify the particular provisions of the proposed injunction.

When an individual or firm has violated the FTC Act, it is appropriate to extend the coverage of injunctive relief reasonably beyond the challenged product, service, claims, or other misconduct. *See, e.g., FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965) ("Having been caught violating the Act, respondents 'must expect some fencing in'") (quoting *FTC v. Nat'l Lead Co.*, 352 U.S. 419, 431 (1957))*; FTC v. Kraft, Inc.*, 970 F.2d 311, 326 (7th Cir. 1992) (multi-product orders, known as "fencing-in," are intended to prevent violators from engaging in similar deceptive practices in the future); *FTC v. RCA Credit Servs., LLC*, No. 08-CV-2062, 2010-2 Trade Cas. (CCH) ¶77,238, 2010 U.S. Dist. LEXIS 129864, at *16 (M.D. Fla., July 29, 2010) ("'Fencing-in' provisions, so long as they bear a reasonable relation to the unlawful practices found to exist that extend beyond the specific violations at issue, can also be utilized to prevent Defendants from engaging in similar deceptive practices in the future"); *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1215 (N.D. Ga. 2008) ("'Broad injunctive

provisions are often necessary to prevent transgressors from violating the law in a new guise.'") (quoting *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1275 (S.D. Fla. 1999)), *aff'd*, 356 Fed. Appx. 358 (11th Cir. 2009). The Proposed Order contains injunctive provisions tailored to prevent Defendants Smith and HES from engaging in the same or similar misconduct. Such provisions will prevent them from evading the Court's Order by engaging in similar practices that are not identical to those challenged in the Amended Complaint.

### III. THE RELIEF REQUESTED IS APPROPRIATE TO PREVENT RECURRENCE OF THE LAW VIOLATIONS

Section I of the Proposed Order would permanently ban Smith and HES from engaging in robo-calling. As shown by the materials submitted in support of the motions for temporary restraining order and for summary judgment, TYS, which Smith effectively controlled, engaged in extensive robo-calling to get business.[1] Furthermore, Smith's prior business, World Wide Marketing, also used robo-calling extensively, not only to sell debt reduction services, but also to sell vacations and to resell timeshares.[2] An illegal robo-calling charge was also included in the FTC's complaint against another Smith company, The Green Savers.[3] Smith and HES have been engaged substantially in robo-calling for an extended period of time, with knowledge that it was illegal.[4] An order banning them from engaging in the practice, which is prohibited by the TSR

---

[1] PX 4, 6, 7, 9, 11, 13, 14, 24.

[2] Sanchez-Ortega deposition transcript, 60:25-61:6 , filed with the FTC's Motion for Summary Judgment (Doc. 174-1) as PX 37.

[3] Exhibit 1 is the FTC's First Amended Complaint against the Green Savers. Count VII, ¶ 62 alleges illegal robo-calling. This Smith company is also discussed in the Strawhecker Report submitted by Defendant UPS under seal, Doc. 94, pp. 20-23.

[4] Smith admitted that he had been aware of the TSR. Smith responses to FTC Requests for Admission, PX 35, Request 8; (Doc. 174-1, pp.258, 267 of 559). He also was aware, specifically of the ban on robo-calls. Smith Deposition Transcript, p. 38, file with the FTC's Motion for Summary Judgment (Doc. 174-1) as PX 34, p. 29.

when done for commercial purposes (without the express prior consent of the person to be called) is appropriate.

The same considerations also require that Smith and HES be banned from telemarketing generally, as proposed in Section II. Virtually all of Smith's accounts with UPS, which incurred so many chargebacks, were telemarketers of CCIRRS or timeshares.[5] Indeed, Smith testified at his deposition about how lucrative telemarketing was for him compared to retail businesses.[6]

Section III proposes that Smith and HES be banned from engaging in the sale of any debt relief product or service, defined as a "product, service, plan or program represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector." (Proposed Order, Definition 2).[7] This ban is appropriate because Smith engaged in the sale of CCIRRS not only through TYS but through at least four other companies. He ran World Wide Marketing, which employed defendant Ramon Sanchez-Ortega who later telemarketed for TYS.[8] He also had three other accounts with UPS that sold CCIRRS: Green Savers, All in One Services and Card Services 3.[9] Green Savers was sued in this court at the same time as TYS with a complaint charging essentially the same offenses as were alleged against TYS.[10] The definition of

---

[5] Smith Deposition Transcript, pp. 19-24, filed with the FTC's Motion for Summary Judgment, (Doc. 174-1) as PX 34, pp. 10-15.
[6] *Id*., pp. 56-57 (PX 34, pp. 42-43).
[7] The definition in the Proposed Order is substantially similar to that in the TSR, 16 CFR §310.
[8] Sanchez-Ortega Deposition Transcript, pp. 80-81, filed with the FTC's Motion for Summary Judgment (Doc. 174-1) as PX 37, pp. 46-47.
[9] Smith Deposition Transcript, pp. 30-35, filed with the FTC's Motion for Summary Judgment (Doc. 174-1) as PX 34, pp. 21-25; Smith Deposition Ex. 1, filed with the FTC's Motion for Summary Judgment (Doc. 174-1) as PX 36.
[10] *FTC v. The Green Savers, LLC et al.*, Civ. No. 6-12-CV-1588-ORL-28-DAB, filed October 22, 2012. The First Amended Complaint and the Stipulated Order for Permanent Injunction and Final Judgment are attached hereto as Exhibits 1 and 2. The Order is almost identical to those agreed to by the other principals of TYS,

debt relief product or service is broader than just CCIRRS and would include other schemes that purport to help consumers reduce their debts. Smith's deposition showed that he viewed debt reduction as just another business opportunity.[11] He should be discouraged from pursuing such opportunities to prey upon indebted consumers.

      A ban is appropriate where the conduct is pervasive, as here and continued for a long time. While TYS operated for only eight months, Smith engaged in similar practices before that with World Wide Marketing and, simultaneously, with Green Savers. Bans are not limited to cases where the defendant has a prior history of violations. Even where there is no indication that defendants continued in illegal conduct after entry of a preliminary injunction or other order, courts have entered bans when the conduct was egregious. *See, e.g.*, *FTC v. 1st Guar. Mortg. Corp.*, No. 09-cv-61840, 2011 U.S. Dist. LEXIS 72274 (S.D. Fla. July 6, 2011) (default judgment and ban on mortgage and credit products and services, and telemarketing in general); *FTC v. Darling Angel Pin Creations, Inc.,* No. 10-cv-335, 2011 U.S. Dist. LEXIS 3981 (M.D. Fla. Jan. 10, 2011) (default judgment and ban on work-at-home opportunities); *FTC v. Home Assure, LLC,* No. 09-cv-547 (M.D. Fla., Dkt. 278, entered Aug. 20, 2010) (default judgment and ban on loan modification and foreclosure relief services); *FTC v. Dinamica Financiera LLC*, No. CV 09-03554, 2010 U.S. Dist. LEXIS 88000 (C.D. Cal. Aug. 19, 2010) (summary judgment and ban on loan modification and foreclosure relief services); *FTC v. Cruz*, No. 08-1877, 2010 U.S. Dist. LEXIS 4568 (D.P.R. Jan. 19, 2010) (default judgment and ban on business, employment,

---

Defendants Toska and Plancher, (Doc. 112) and to the Order agreed to by Smith's collaborator, Defendant Jonathon Warren (Doc. 210).

    [11] In fact, Smith used the CCIRRS businesses to make extra money by selling tablet computers to them to provide to all of the consumers they signed up. Smith Deposition Transcript, pp. 73-77, PX 34, pp. 50-54.

investment, and work-at-home opportunities); *FTC v. Jordan Ashley*, 1994-1 Trade Case (CCH) ¶70,570 (S.D. Fla. Apr. 5, 1994) (litigated ban on franchise and business venture marketing).

Section IV would prohibit Smith from engaging in certain types of misrepresentations if he elects to engage in the sale of financially related products or services other than debt reduction. The products and services are listed in Definition 6 and include a broad array of products, like loans and credit cards. The listed prohibitions are of the type that are endemic to the financial products industry such as failing to make full disclosure of terms and costs, misrepresenting the ability to improve a consumer's credit rating, the amount of savings the consumer will realize, and similar misrepresentations. This "fencing-in" is appropriate. Smith's accounts with UPS, taken collectively, not just TYS, World Wide Marketing and Greensavers, were producing excessive chargebacks at UPS, to the point that the amount of chargebacks was an indicator of fraud. Smith had a penchant for engaging in businesses that deceived consumers. He needs considerable fencing-in.

Fencing in is also appropriate as proposed by Section V and VI which would prohibit Smith from engaging in misrepresentations of basic terms in connection with the sale of any product or service. Section V would prohibit material misrepresentations that are basic to any sale, like a misrepresentation of total costs and refund policies. Section VI would prohibit unsubstantiated performance claims. Furthermore, Smith's collaborators in TYS, Defendants Plancher Toska and Warren, all agreed to be bound by these prohibitions. (Doc. Nos. 112, 210)

Section VII provides for a monetary judgment against Smith in the amount of $1,734,972. This represents the gross revenues of TYS less the chargebacks paid out by UPS. The Court found that Smith was liable for the law violations committed by TYS as a principal in

the enterprise and, as such, the proper measure of equitable monetary relief is the gross revenue of the enterprise less refunds. This issue is discussed in detail in the Motion for Judgment against Defendants Smith and HES Merchant Services, Inc., filed at the same time as the instant motion.

Section VIII requires Smith and HES to provide any information in their possession to the FTC, to assist in the return of funds collected to consumers. It also prohibits them from benefitting from such information and requires them to destroy it within thirty days of the final disposition of this action. Destruction of such records is necessary to ensure that Defendants neither use it to obtain future sales, nor sell it to third parties. *FTC v. John Beck Amazing Profits, LLC et al.*, 888 F.Supp.2d 1006, 1016 (C.D. Cal. 2012)

Section IX prohibits Smith and HES from trying to collect on any of the accounts of TYS. Since all of these accounts were obtained through violations of the FTC Act and the TSR, the Defendants should not be permitted to attempt to collect on them.

Sections X through XIII, dealing with, respectively, order acknowledgements, compliance reporting, recordkeeping, and compliance monitoring by the FTC are common provisions in FTC orders. *SlimAmerica*, 77 F. Supp. 2d at 1276; *FTC v. RCA Credit Servs., LLC*, No. 08-CV-2062, 2010 U.S. Dist. LEXIS 73461, at *35 (M.D. Fla. July 20, 2010) (granting summ. j.) (citing *SlimAmerica*, 77 F. Supp. at 1276) and 2010 U.S. Dist. LEXIS 143755, at *10-19 (am. final order entered Oct. 14, 2010); *FTC v. Advanced Pub. Commc'ns Corp.*, No. 00-00515-CIV (S.D. Fla. Feb. 26, 2001) (default order with monitoring provisions); *FTC v. Wilcox*, 1995-2 Trade Cas. (CCH) ¶71,160 (S.D. Fla. 1995) (order after summ. j. with monitoring

provisions); *Jordan Ashley*, 1994-1 Trade Cas. (CCH) ¶70,570 (order after trial with monitoring provisions).

The court would retain jurisdiction over the order for purposes of construction, modification and enforcement in Section XV.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff FTC respectfully requests that the Court enter the attached proposed Final Judgment and Order against Defendants Smith and HES.

Respectfully submitted,

Dated: December 5, 2014

*/s/ Michael Milgrom*
Michael Milgrom, OH Bar # 0012959
    Trial Counsel
Fil M. de Banate, OH Bar # 0086039
Christopher D. Panek OH Bar # 0080016
Federal Trade Commission
1111 Superior Avenue East, Suite 200
Cleveland, Ohio 44114
(216) 263-3419 (telephone) (Milgrom)
(216) 263-3426 (facsimile)
*mmilgrom@ftc.gov*
*fdebanate@ftc.gov*
*cpanek@ftc.gov*
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the forgoing PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION FOR PERMANENT INJUNCTION AGAINST DEFENDANTS HAL E. SMITH AND HES MERCHANT SERVICES COMPANY, INC on December 5, 2014. The parties and the Court-appointed Receiver, Michael L. Gore, were served by operation of the Court's electronic system.

Defendants H.E. Smith and HES Merchant Services Company, Inc. were served by FedEx delivery at the following address: 1709 Lafayette Avenue, Lebanon, Indiana 46052.

Dated: December 5, 2014                  */s/ Michael Milgrom*
                                         Michael Milgrom
                                         One of the Attorneys for Plaintiff